EDWIN S. JONES et al., Appellants, *v.* ELBERT O. SMITH, Respondent.

Where a deed contains an accurate description, by permanent boundaries capable of being ascertained, a general reference, in addition, to the premises as in the possession of the grantor or grantee will not pass title to lands outside of the boundaries given; the more certain and permanent portions of the description will control.

In an action of ejectment plaintiff claimed under a deed which described the premises generally as " the lot or piece of land called the Cross lot," and as " now in the possession " of the grantee; following this was a description by metes and bounds, in which the easterly boundary of the lands conveyed was given as " the east line of the Montressor patent, as the same ought to be established." T., the grantee at the time of the grant, was in possession and occupying up to a fence on the east, which was beyond the east line of the patent; the grantor had no paper title beyond the line of the patent, and it did not appear that at that time a title had been acquired either by grantor or by grantee by adverse possession or practical location of the line. *Held,* that the intent of the parties was to limit the grant to lands within the boundaries of the patent; and that plaintiff could not claim under it beyond the line given, unless a different one had been established subsequently by adverse possession or practical location.

The original fence was built about 1813, upon a curved irregular line, not claimed or supposed to be the line of the patent, but to avoid an obstruction on that line. At the time the adjoining premises were unoccupied; the fence was maintained where it was first erected until 1866, when it was

removed by defendant and placed on the true line. In 1844, one V. O. was owner and occupied the farm so deeded to T., and B was the owner of the farm adjoining on the east. It was agreed between V. O. and B. that the fence should be continued as a division fence until convenient for the parties to build a permanent one upon the true line. The land in question was the strip between the true line and that of the old fence. *Held,* that the evidence failed to show any adverse claim of right to occupy to the line of the old fence, or an acquiescence by the adjoining owners in that as the true line; that in the absence of evidence to the contrary it must be assumed that the fence was maintained up to 1844 on the line where it was originally built, under an implied license, and after that time under an express license, as a temporary division fence, not as a permanent boundary line.

(Argued March 19, 1878; decided April 2, 1878.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of defendant, entered upon an order nonsuiting plaintiff on trial.

This was an action of ejectment. It is reported upon a former appeal in 64 N. Y., 180.

The parties were adjoining owners; the question was simply as to the boundary line between them. Plaintiffs claimed under a deed executed in 1820, from one Seth Hunt to George Throop, which described the premises conveyed as follows: " All that certain lot or piece of land called the Cross lot, situate in Willsborough, in the county of Essex, aforesaid, and now in possession of the said George Throop, containing fifty-one acres one quarter and thirty-two rods, being part of the Benson and Montressor patent, so called, bounded as follows: South by the north line of the Pratt lot, so called, now in possession of Levi Higby; northwest by the back line of the Benson patent; north by the south line of a tract of land conveyed to Noah French; and east by the east line of the Montressor patent, as the same ought to be established between that patent and the west line of the Ross patent, so called."

The grantee Throop was, at the time, in possession and had been since 1812. As early as 1813 he built a fence to inclose the farm on the east and to protect a crop of wheat.

The evidence showed that in consequence of, and to avoid an obstruction caused by a ledge of rocks, on the true line of the Montressor patent, which was a straight line, the fence was built on a curved irregular line, east of the true line, and the strip of land in question was that lying between the true line and that upon which the fence was built. At that time the land adjoining on the east was unoccupied. The fence was kept up and maintained on the line where it was originally erected until 1866, when defendant removed it and built a new fence on the patent line. From the time of the erection of the fence in 1813, up to its removal, the adjoining owners, so far as there was any occupancy, occupied up to the fence. In 1844, one Van Ornam was the owner and in possession of the farm claimed by plaintiffs, and one Boynton was the owner of the farm adjoining on the east, which was bounded by the patent line. It was understood and agreed between Van Ornam and Boynton that the fence should be continued where it was as a division fence until it would be convenient for them to build a better and permanent division fence, and the fence was divided, each one agreeing to and thereafter keeping his half in repair.

Further facts appear in the opinion.

*Samuel Hand*, for appellants. The designation of the land in question as the "Cross lot as possessed in 1820 by George Throop" controlled the subsequent bounds by force of the rule that the clause of a deed which comes first is to govern and control all subsequent clauses. (Plowd., 541; Co. Litt., 112; Shep. Touch., 88.) If the whole instrument be taken together the boundaries must give place to the specific designation of the property and it cannot be limited by any subsequent mode of words of description. (*Jackson* v. *Barringer*, 15 J. R., 471; *Lodge* v. *Lee*, 6 Cranch, 237; *Keith* v. *Reynolds*, 3 Greenl., 393; *Rutherford* v. *Tracey*, 48 Mo., 325; *Doe* v. *Thompson*, 5 Cow., 371; *Lush* v. *Druse*, 4 Wend., 313; *Pettit* v. *Shepard*, 32 N. Y., 97; *White* v. *Williams*, 48 id., 344; *Donahue* v.

*Case*, 61 id., 631; *Wendell* v. *People*, 8 Wend., 183; *Raynor* v. *Timerson*, 46 Barb., 518; *Harsha* v. *Reid*, 45 N. Y., 418.) The line in dispute was established by practical location and mutual acqueiescence. (*Baldwin* v. *Brown*, 16 N. Y., 359; *Reed* v. *Farr*, 35 id., 113; *Hunt* v. *Johnson*, 29 id., 19; *Robinson v. Phillips*, 1 T. & C., 151; *Pierson* v. *Mosher*, 30 Barb., 81; *Ratcliffe* v. *Gray*, 3 Keyes, 510; *Stuyvesant* v. *Dunham*, 9 J. R., 61; *Jackson* v. *Dysling*, 2 Caines, 197; *Hubbell* v. *McCullough*, 47 Barb., 288; *Ernst* v. *H. R. R. R. Co.*, 35 N. Y., 25.) If there was any evidence which tended to establish a defense it raised a question of fact and the nonsuit cannot be sustained. (5 Cow., 371; *Ratcliffe* v. *Gray*, 3 Keyes, 510; *O'Niell* v. *James*, 43 N. Y., 84; *Train* v. *Hol. Pur. Ins. Co.*, 62 id., 593; *Slade* v. *McMullen*, 45 How., 52.) Boynton's testimony as to his conversation with Van Ornam was improperly admitted. (*Jackson* v. *Luquere*, 5 Cow., 221; id., 371; *Vrooman* v. *King*, 36 N. Y., 477; *Drew* v. *Swift*, 46 id., 204; *Reed* v. *McCourt*, 41 id., 435.) The deeds introduced by defendant were improperly admitted. (*Crary* v. *Goodman*, 22 N. Y., 175; *Sherry* v. *Friching*, 5 Duer, 452.) The court had jurisdiction to give a final judgment for plaintiffs. (*Marquat* v. *Marquat*, 2 Kern., 336; *Edmonston* v. *McLoud*, 16 N. Y., 543; *Burkhardt* v. *McClellan*, 15 Abb., 243.)

·*Rob't S. Hale*, for respondent. The time proved of the location of the line was too short to constitute a title by practical location. (*Hubbell* v. *McCullough*, 47 Barb., 287, 297, 298, 299, 302; *Adams* v. *Rockwell*, 16 Wend., 285; *Clark* v. *Wethey*, 19 id., 320; *Baldwin* v. *Brown*, 16 N. Y., 359; *Terry* v. *Chandler*, id., 354; *Hunt* v. *Johnson*, 19 id., 279, 298; *Corning* v. *Troy Iron and Nail Factory*, 44 id., 577, 595 ; *Drew* v. *Swift*, 46 id., 204, 209 ; *Clark* v. *Wethey*, 5 Seld., 183, 204.) The conversation of Boynton with Van Ornam was properly received in evidence. (*Donahue* v. *Case*, 61 N. Y., 631 ; *Pitts* v. *Wilder*, 1 id., 525.)

Allen, J. The plaintiffs can take no benefit from the terms of the description of the granted premises from Hunt to Throop, so as to extend the boundaries beyond the east line of the Benson and Montressor patents. That line was the boundary of the lands granted on the east, and the more general and introductory description preceding the specific and particular boundaries, as " the lot or piece of land called the cross lot and now in the possession of the said George Throop," was too general to control and override the more certain and material description following. If, by an adverse occupation, or by mutual acquiescence of the adjoining owners of lands on the two sides of the true line, a different line had been established as the east line of the patent and the Throop farm, the line, as thus established, would have been the eastern boundary of the grant. That line would have superseded the original and actual boundary and become the true line for all purposes. But Hunt could not make title of lands outside of the patent under which he took title. He did not claim title except under the patent named in his deed, and there is no evidence tending to show that at that time a title had been acquired, either by Hunt or Throop to the premises in controversy, on any lands east of the boundary line of the patent, either by adverse occupation or a practical location of the line by the acquiescence of the owners of the lands adjoining on the east. An island or any other parcel having a well-known designation, conveyed as such and by name, would pass, although misdescribed in the statement of the particular boundaries or as to quantity, and for the reason that the intent to grant a tract of land, well and definitely described by its name, is evident ; but no such intent can be inferred by a general reference, in addition to an accurate description by permanent boundaries capable of being ascertained, to the premises intended as in the possession of the grantee or grantor. That would be to reverse the rule and make the less certain and permanent portions of the description control the more certain and permanent, which is not permitted. (*Doe* v. *Thompson,* 5 Cow., 371;

*Jackson* v. *Barringer*, 15 J. R., 471; *White* v. *Williams*, 48 N. Y., 344; *Lodge's Lessee* v. *Lee*, 6 Cranch [S. C.], 237.)

The intent of the parties was to limit the grant to lands within the boundaries of the patent mentioned, and the plaintiffs cannot claim under the grant of Hunt beyond the true and proper boundary lines of the patent, unless a different line has been established by adverse possession or a practical location. The true line of the patent is very clearly as claimed by the defendant. Of this there can be no dispute. The east line of the patent is a straight line, and not the irregular and curved line up to which the plaintiffs now claim and upon which the original fence was built. A line different from the true line cannot, upon the evidence, be claimed by the plaintiffs. The fence, claimed by the plaintiffs as the line, was built very many years since and as early as 1813, and has been maintained from that time up to the removal of the same by the defendants, shortly before the commencement of this action, and the occupation of the owners of the adjoining lands upon either side, as far as there has been an occupation, has been up to that fence. But the fence was built by Throop at a time when the lands were not cultivated, and when there was no occupant of the lands to the east of the line on the Ross patent, and it was located by Throop, not under a claim of title, or as being on the true line, or for a permanent boundary, but, as is proved by one who took part in building it, merely to get around an obstacle on the direct line interposed by a bluff or ledge of rocks, and it was not claimed or supposed to be on the true line.

While Van Ornam was in possession as owner of the lands now claimed by the plaintiffs, it was understood and agreed between him and Boynton, the owner of the adjacent lands, that the fence should be continued as a division fence between them until it should be convenient for the parties to build a better and permanent division fence upon the true line. This is clearly proved and is uncontradicted, and as is said by Judge Rapallo, when this case was before us upon a former

appeal, qualifies the effects of the possession as evidence of a practical location or adverse possession. There is no evidence of any adverse claim of right to occupy to the line of the crooked fence, or an acquiescence by the owners of the adjacent lands in the maintenance of the fence as a division fence upon the line between the two patents, or as the eastern boundary of the plaintiffs' land.

The fence must be assumed, in the absence of evidence to the contrary, to have been maintained on the line on which it was originally built, under an implied license prior to 1844 and an express license from the time of the arrangement between Van Ornam and Boynton, as a temporary division fence between the owners and not as establishing or being a permanent boundary line between them.

A verdict for the plaintiffs could not have been sustained upon the evidence before us. The opinion of Judge RAPALLO, as reported in *Jones* v. *Smith* (64 N. Y., 180), and that of Judge BOARDMAN, of the Supreme Court, in giving the judgment from which this appeal is brought, cover every question now presented, and are decisive of this appeal and obviate the necessity of a more extended examination of the evidence.

The judgment must be affirmed.

All concur, except RAPALLO, J., absent.

Judgment affirmed.