(54 App. Div. 118.) ·

## OCEAN CAUSEWAY OF LAWRENCE, L. I., v. GILBERT.

(Supreme Court, Appellate Division, Second Department.  October 26, 1900.)

1. DEEDS—CONSTRUCTION—INTENTION OF PARTIES.

Defendant bought certain premises at a. sheriff's sale, the land being described by metes and bounds, which description concluded with a period, and was followed by an independent paragraph, "Together with the drawbridge, bulkheads, causeway, or road, and all the buildings erected on the said above-described premises," a part only of the causeway and bridge being constructed on the land described. The sheriff levied on all the property in plaintiff's possession, and in use in connection with the maintenance of the causeway, and the notice of sale offered the whole property, which was described in detail as to two of the plots, while the third was conveyed by a term which described the purpose to which it was dedicated. It appeared that there was no other causeway or drawbridge in that vicinity, and that defendant paid a substantial consideration. *Held,* that the deed included the drawbridge, causeway, and buildings, since the circumstances surrounding the sale showed it to be the intention of the parties that they should pass.

2. SAME—SALE OF RIGHTS OF TENANT—EFFECT ON OWNER'S RIGHTS.

Where a party who has no title to certain premises, being an occupant of the same by consent of the real owners, deeds whatever right and interest he has in the same, the rights of the real owner are not affected thereby.

Appeal from trial term, Nassau county.

Action by Ocean Causeway of Lawrence, L. I., a corporation, against Frederick L. Gilbert, to determine claims to certain real property. From a judgment in favor of the plaintiff, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Charles D. Ingersoll, for appellant.
Peter B. Olney, for respondent.

WOODWARD, J.  The plaintiff is a domestic corporation, evidently organized for the purpose of constructing and maintaining a causeway, with a drawbridge, across Rockaway Inlet, in the town of Hempstead, L. I., for which tolls are collected of those who make use of the way.  In January, 1897, James A. Simmons and Joseph Marrone recovered a judgment against the plaintiff for $5,841.19, upon which execution was issued to the sheriff of the county of Queens, directing him to satisfy the same out of the personal property of the debtor, and, in the event that a sufficient amount of personal property be not found, then out of the real property owned by the debtor at the time of docketing the said judgment.  The sheriff, failing to find sufficient personal property, levied upon and seized all the estate, right, title, and interest which the judgment debtor had of, in, and to the premises involved in this action.  Subsequently the sheriff advertised the property for sale, and on the 8th day of May, 1897, it was struck off to the defendant for $5,850.  It appears that this causeway or road, with the drawbridge, is located upon three several plots of ground, one of them known as a portion of Shelter Island, the detailed description of which is given in the deed,

and does not appear to be necessary to the determination of this controversy. The second plot is described as "all that certain strip, piece, or parcel of meadow, marsh, and beach lands situate, lying, and being in the town of Hempstead, county of Queens, state of New York, the center line of which is bounded and described as follows, to wit: Beginning at a stake on the southerly side of Cedarhurst avenue, which forms part of the southerly boundary of Cedarhurst in said town, and running thence south, 11 degrees 49 minutes east, 2,229 feet, to a stake on the northerly side of Rockaway inlet, said line being parallel with the westerly line of a dug ditch, the location of which is shown on a 'Map of a portion of Shelter Island, belonging to the town of Hempstead; survey made April, 1892, for F. B. Lord, Esqr.; scale 100 feet to 1 inch,' made by Thomas V. Smith, civil engineer, filed in the office of the town clerk of the town of Hempstead May 23rd, 1892, and is distant from the westerly line of said ditch forty-five feet; thence, continuing the same in a straight line south, eleven degrees forty-nine minutes east, across said Rockaway inlet and marsh or beach land to land first described in said indenture of lease, dated May 27th, 1892, being about eight hundred feet. The said strip herein described being ninety feet in width, to wit, forty-five feet on each side of said center line above described measured at right angles thereto." Immediately following this description, which ends in the deed with a period, and in an independent paragraph, are found the following words: "Together with the drawbridge, bulkheads, causeway, or road, and all the buildings erected upon the said above-described premises." It is conceded that only a portion of the causeway, with the drawbridge and buildings, is constructed upon the above-described premises; and the question raised by the plaintiff's action, in which it seeks an injunction restraining the defendant from asserting rights in the causeway, drawbridge, etc., is whether these words convey title to this portion of the property of the plaintiff. The learned court below found in favor of the plaintiff, holding that the descriptions given by the sheriff's deed did not include the drawbridge, causeway, and buildings, and that "nothing passes by a deed except what is described in it, whatever the intention of the parties may have been"; citing Coleman v. Improvement Co., 94 N. Y. 232, and Thayer v. Finton, 108 N. Y. 397, 15 N. E. 615. From the judgment entered upon this decision, to which the defendant has filed an exception, appeal comes to this court.

After a careful examination of this question, we are forced to conclude that the court below has applied the rule without due regard to its limitations, and that the judgment does not do justice to the defendant, who has invested nearly $6,000 under circumstances which gave him a right to expect that he was purchasing the title to whatever rights the plaintiff had in the causeway, with its drawbridge, toll house, and other structures incident to the same. The policy of the law does not require courts to scrutinize the proceedings of a judicial sale with a view to defeat them. On the contrary, every reasonable intendment will be made in their favor, so as to secure, if it can be done consistently with legal rules, the object they were intended to accomplish. White v. Luning, 93 U. S. 514, 523, 23 L.

Ed. 938.    In Coleman v. Improvement Co., supra, relied upon by the court below, in introducing the language quoted, it was said:

"It is doubtless true that the premises upon which a grant is to operate must be described in the grant so that they can be identified. But it is not necessary that they should be described by boundaries, courses, or distances, or by reference to monuments. Words of general description, such as 'the estate of Blackacre,' or 'the estate purchased of A.,' or 'the farm in the occupation of B.,' are sufficient."

At this point the court remarks:

"Nothing passes by a deed except what is described in it, whatever the intention of the parties may have been; but, when words of general description are used, oral evidence is admissible to ascertain the particular subject-matter to which they apply, without infringing upon the rule which prohibits parol evidence to add to or contradict the language of written instruments."

In People v. Storms, 97 N. Y. 364, 367, where it was sought to avoid a mortgage by reason of vagueness and uncertainty in the description of the mortgaged premises, the court say:

"In answering it, we are to regard the rule that a deed should never be held void when the words may be applied to any intent to make it good, and to that end they are to be taken most strongly against the grantor, for he should not be allowed to say a description framed by himself was so indefinite that, upon an enforcement of the mortgage, no title to the property could be acquired. It is enough, therefore, if, by any particulars in the description, the thing granted can be sufficiently ascertained to enable the court to say that the words chosen by the parties were intended to relate to it; and for that purpose we may go beyond the face of the deed if it refers to some subject-matter in respect to which we can locate and apply the description."

The court, singularly enough, cites Coleman v. Improvement Co., supra, for this proposition, and it was said in White v. Luning, supra, that "the rules are the same, whether the deed be made by a party in his own right or by an officer of the court." In the Storms Case, supra, the mortgage described "a certain other piece or parcel of land lying and being situated in the county of Tompkins, being part of lot No. 86, in Lansing, aforesaid, bounded as follows, viz." Here followed a detailed description of a lot containing 133 acres of land, the same more or less, with this addition: "The intention of this last-mentioned piece of land is to mortgage 46 acres of land on the south side of it next to Mr. Norton's, to secure a part of the above consideration." The property was not contained within the limits of the land described, but was on the south side of it, next to Mr. Norton's, and the court held that the description of the 133 acres was inserted by mistake, and that the 46 acres of ground mentioned in the last clause, and which could be found between the north line of Norton's land and south of the parcel described, was the property intended to be mortgaged.

In Jones v. Smith, 73 N. Y. 205, 209, the court say:

"An island or any other parcel having a well-known designation, conveyed as such and by name, would pass, although misdescribed in the statement of the particular boundaries, or as to quantity, and for the reason that the intent to grant a tract of land well and definitely described by its name is evident."

So in the case of Wooley v. Inhabitants of Groton (Mass.) 2 Cush. 305, 309, the court say:

"On consideration the court are of opinion that a pound, ex vi termini, is an inclosed piece of land, secured by a firm structure of stone or of posts and timber, placed in the ground; and, like the grant of a mill, house, or wharf, carries the land on which it stands with it, not as an appurtenance, but as parcel of the subject of the grant."

In Johnson v. Rayner, 6 Gray, 107, where the grant, in addition to the fee of a house and land, conveyed "also a well of water, with the curbs, pumps, and all utensils belonging to them, as the same now stands in my other land," it was held that the fee to a plot of ground inclosing the well passed to the grantee. The court say:

"The term 'well' aptly designates the soil covered by and used with it. It is an artificial excavation and erection in and upon land, which necessarily, from its nature and the mode of its use, includes and comprehends the substantial occupation and beneficial enjoyment of the whole premises on which it is situated."

These authorities rest upon the sound and reasonable rule that whenever land is occupied and improved by buildings or other structures designed for a particular purpose, which comprehends its practical beneficial use and enjoyment, it is aptly designated and conveyed by a term which describes the purpose to which it is thus appropriated. Johnson v. Rayner, supra. Considering the facts of the case at bar in the light of these modifications of the rule, we are of opinion that the sheriff's deed passed title to the interest of the plaintiff in the specific parcels described by metes and bounds, "together with the drawbridge, bulkheads, causeway, or road, and all the buildings erected upon the said above-described premises"; the last clause being regarded as mere surplusage. A causeway is defined by the American and English Encyclopœdia of Law (vol. 5, p. 777) as "a way raised above the level of the ground by stones, earth, timber, etc., serving as a dry passage over wet or marshy ground"; and the drawbridge involved in the present controversy is merely a portion of the causeway leading over an arm of the sea. It is not questioned that the sheriff levied upon all of the property in the possession of the plaintiff and in use in connection with the maintenance of the causeway, from which a revenue was collected. It appears affirmatively that there is no other causeway or drawbridge in that vicinity, and the sheriff's notice of sale offers the whole property, which is described in detail as to two plots, while the third is conveyed by a term which describes the purpose to which it is dedicated. This meets the requirement that in determining what is to be conveyed by a deed the intention of the parties, as in every other instrument, is controlling (Perrior v. Peck, 39 App. Div. 390, 396, 57 N. Y. Supp. 377), and it permits the defendant to receive that which he evidently purchased in good faith, paying therefor a substantial consideration.

We have nothing to do with the fact that the plaintiff had no title to one of the parcels described, or that it is occupying the parcel by consent of the real owners. The defendant purchased whatever of right and interest the plaintiff had in the general property used in connection with this causeway. If a third party, not before this court, has a good title to any of the parcels involved, his rights are not affected by the judgment in this action. We have only to do

with the parties before us, and, as between them, upon this record, the defendant was entitled to prevail.

Judgment reversed, and new trial granted, without costs. All concur, except HIRSCHBERG, J., not voting.