CHARLES HASTINGS *vs.* JOSHUA MERRIAM.

Worcester.    Jan. 6. — March 25, 1875.    ENDICOTT & DEVENS, JJ.,
absent.

The parties to a writ of entry submitted the case to the determination of this court on an auditor's report, which it was agreed should be taken as a statement of facts. The report stated that the demandant's title was derived from a deed from A. to B., signed, sealed and attested by two witnesses. The attestation clause of the deed was in the usual printed form, with the words "and delivered" erased by a stroke of the pen, but when this was done did not appear. The deed, in the granting clause, named B. as the grantee, and described him as a resident of a lunatic asylum; and after a description of the premises, declared that it was understood that the premises were to remain under the control of the grantor and his heirs, so long as he or they should pay for the support of the grantee, and that the property was to enure to the benefit and use of the grantor's father and mother during their lives, "afterwards to the said B. in his sole right, to be disposed of, if necessary, for his support and maintenance; and if not necessary for his maintenance, the same property shall fall in equal portions to each of my sisters." The habendum was "to him and them and their heirs and assigns," to his and their use forever. The covenants were with B., the father and mother, "&c.," and the first was, "that until delivery hereof, I am the lawful owner of the said premises." The deed was recorded, and indorsed on the deed, in the handwriting of the grantor, under date of ten years after the date of record, was a statement that, as the grantor had paid more than the value of the property for the support of B., "the property enures to me and my heirs, after its use shall not be wanted for him." The demandant's title was derived by deed from the sisters. The auditor found that the deed remained in A.'s possession until his decease, and ruled that the deed conferred no title upon any of the persons named therein. *Held,* that a delivery of the deed might be inferred from the facts reported by the auditor; but as the auditor had not found a delivery, the demandant's title failed. *Held, also,* that, if there was a delivery, the deed conveyed an estate to B. for life, and that the sisters had no estate in remainder.

* By the St. of 1874, *c.* 184, "A married woman may convey her shares in corporations," "in the same manner as if she were sole."

A demandant in a writ of entry, brought in 1872, put in evidence that his grantor from 1819 to 1834 had been a tenant of an adjoining estate, and that during this period he had enlarged the house thereon, and had extended it over a part of the land in controversy, and had cultivated the rest of the land as a garden, claiming it as his own. *Held*, that on this evidence the action could not be maintained.

WRIT OF ENTRY, dated March 22, 1872, to recover land in Ashburnham. At the trial, before *Gray*, C. J., the parties agreed that the following report of an auditor, to whom the case had been referred, should be taken as a statement of facts, and judgment rendered according to the opinion of the full court upon the matters of law arising thereon:

"It was agreed that the demanded premises consist of two lots of land; one of which embraces nearly all the land in controversy, and the other, known as the 'Hill Lot,' is a small lot situated in the rear of the house upon the large lot. Both parties derive their title to the large lot under Isaac Hill, formerly governor of New Hampshire. The tenant claims under a deed from the administrator of said Hill, given in 1853, in pursuance of a license of the Probate Court, and which embraces both the lots. The demandant claims the large lot under a deed from Isaac Hill to Walter R. Hill, dated and acknowledged August 30, 1834, and recorded September 2, 1834, the material portions of which, with indorsements thereon, admitted to be in the handwriting of the grantor, are in the margin.*   This deed, thus indorsed, was in the posses-

---

* "Know all men by these presents, that I, Isaac Hill, of Concord, county of Merrimack and State of New Hampshire, for and in consideration of the sum of fifteen hundred dollars, to me in hand before the delivery hereof, well and truly paid by Walter Russell Hill, late of the same Concord, now a resident in the lunatic hospital in Worcester, Massachusetts, the receipt whereof I do hereby acknowledge, have given, granted, bargained and sold, and by these presents do give, grant, bargain, sell, alien, enfeoff, convey and confirm unto the said Walter R. Hill, the house and out-buildings at Ashburnham, now in the occupancy of Isaac Hill, Senior, together with the lot of land upon which said house stands, and the adjacent lot of land which I purchased of Charles Hastings, Jun., May 23, 1828, (exclusive of the part reconveyed to him in the year 1833,) both of which lots are situated near the Methodist meeting-house in said Ashburnham; also twelve acres of wood land situated on the road leading from the village in said Ashburnham to Randall's Pond, (so called,) being the same lot which I purchased of Charles Hastings, Jun., Feb. 4, 1828, for a particular description of which reference is made to said Hastings's deed, recorded in the Worcester Registry of Deeds, Book 268, Page 61.

.sion of Isaac Hill, the grantor, at his decease. Walter R. Hill, the grantee named therein, who died in 1855, is admitted to have been insane during the whole time in which delivery to any one was offered to be proved ; and the deed was not shown to have ever been in his possession. The demandant contended that all the persons named in the habendum of the deed were grantees, and put in evidence a release to himself from all of them, but

---

"It is understood that the said premises are to remain under my control, and the control of my heirs and assigns, so long as I or they shall pay for the necessary support of said Walter R. Hill, in board and clothing, and that the said property is to enure to the benefit and use of my father, Isaac Hill, and my mother, Hannah Hill, during the period of their natural life, — afterwards to the said Walter R. Hill, in his sole right, to be disposed of, if necessary, for his support and maintenance; and if not necessary for his maintenance, the same property shall fall in equal portions to each of my sisters, Hannah, Sultina, Susan, Mary and Rebeckah, or to their children, if they shall be living after his decease.

"To have and to hold the said granted premises, with all the privileges and appurtenances to the same belonging, to him and them and their heirs and assigns, to his and their only proper use and benefit forever. And I, the said Isaac Hill, and my heirs, executors and administrators, do hereby covenant, grant and agree to and with the said Walter, Isaac, Hannah, &c., and their heirs and assigns, that until the delivery hereof, I am the lawful owner of the said premises, and am seised and possessed thereof in my own right in fee simple; and have full power and lawful authority to grant and convey the same in manner aforesaid; and that the said premises are free and clear from all and every incumbrance whatever ; and that I and my heirs, executors and administrators, shall and will warrant the same to the said Walter, Hannah, Isaac, &c., and their heirs and assigns, against the lawful claims and demands of any person or persons whomsoever.

"In witness whereof I have hereunto set my hand and seal this thirtieth day of August, in the year of our Lord one thousand eight hundred and thirty-four."

"Signed and sealed in presence of us, C. Barton, Aaron Ray.".

The words "and delivered" are printed in the blank upon which the deed is written, and erased by a stroke of the pen.

The following is indorsed in pencil, upon the back of the deed : " Aug. 3, 1844. Having since the date of the within deed, paid more than the value of the within property for the support of Walter R. Hill, the property enures to me and my heirs, after its use shall not be wanted for him. I. H." " Aug. 3, 1844. Having since the date of the within deed paid more than the value of the within property for the support of Walter R. Hill, the property enures to me and my heirs, after its use shall not be wanted for him. Written and copied from the pencil draft, this 5th day of January, 1849."

one, or their heirs.   I ruled that the deed conferred no title upon·
any of the persons named therein, and that the demandant showed
no title to the large lot.

   "The small lot known as the ' Hill Lot,' the last title to which
by deed was in William J. Lawrence, was claimed by the de-
mandant under a title derived from Hannah Hill.   It appeared
that this lot is contiguous to, and immediately in the rear of the
house situated upon the large lot.   The large lot contained about
an acre of land, and the Hill Lot about five square rods.   The
Hill Lot was not included in the deed from Isaac Hill to Walter
R. Hill, but the evidence offered by the demandant tended to
show that Hannah Hill occupied the house and large lot as the
tenant of Isaac Hill, from 1819 to 1834, the date of the deed of
Isaac Hill to Walter R. Hill ; that during this time she enlarged
the house by putting an L to it, a portion of which L extended
several feet over the Hill Lot ; and that she cultivated the re-
mainder of the Hill Lot as a garden in connection with the house,
and claimed it as her own land, which claim, however, did not
appear ever to have been brought to the notice of Isaac Hill.   It
was conceded that if Hannah Hill had had a title to this Hill
Lot, it was acquired by the demandant.   The demandant upon
these facts claimed title in Hannah Hill, by possession, to the
Hill Lot.   The tenant contended that whatever title was gained,
if any, enured to the benefit of Isaac Hill.   I ruled that the de-
mandant showed no title to the Hill Lot."

   At the argument the parties agreed that Isaac Hill, the grantor,
and Walter R. Hill were brothers, and that Walter died without
issue and unmarried, and all his sisters survived him.

   *W. S. B. Hopkins*, for the demandant.   1. The demandant is
entitled, on the facts developed before the auditor, to recover the
large lot, under the deed.   The deed, construed as a whole, al-
though inartificially drawn, operates to give life interests to the
father, mother and brother of the grantor, with remainder in fee
to the sisters.   These sisters survived Walter.   The interests
conferred on the father, mother and brother are secured and pro-
tected to them by the second clause of the deed, which is opera-
tive as a covenant to stand seised to uses.   Under that clause, the
grantor places himself and his heirs in a fiduciary relation, holding
the estate during three lives for the benefit of three *cestuis que use.*

and expressly providing that the whole estate conveyed shall be liable to be "disposed of" for the support of Walter R., if necessary. That the grantor only intended to give Walter R. a life estate further appears from the words of grant, which do not give the land to his heirs ; and from the habendum, which is peculiar in not specifying "his" heirs, although the land is given to have and to hold "to him" and to "his" use and behoof. The remainder, if the trustee holding to the use of Walter should not find it necessary to dispose of the land, is given to the sisters and their heirs with entire clearness. "The property shall fall in equal portions to each of my sisters (naming them) or to their children, if they shall be living at his (Walter's) decease. This is confirmed by the habendum to "their" heirs. So, too, the covenants of seisin and warranty run to the three life tenants, "&c.," "their" heirs and assigns. It is clear that this use of "their heirs" does not mean the heirs of Isaac or Hannah, to whose benefit the property was to "enure" "during the period of their natural life." This use of the words "their heirs" cannot include Walter, whose personal maintenance alone was contemplated. And the "&c." can mean only the sisters, and "their heirs" must be applied to them only for they are the only persons who are ever to enjoy the estate otherwise than "under the control" of the grantor and his heirs, as trustees under the covenant to stand seised. Whether the deed is regarded as a covenant to stand seised founded on the consideration of blood, or as a deed of bargain and sale founded on pecuniary consideration, it will be operative to pass an estate *in futuro*. *Trafton* v. *Hawes*, 102 Mass. 533.

2. The evidence is sufficient to show a delivery of the deed. The fact that the words "and delivered" were erased, with no evidence of when the erasure was made, or by whom, or for what reason, is entirely inconclusive on the question of delivery. The deed was recorded, and some of the grantees lived on the premises, and this makes a *primâ facie* case of delivery, and it is incumbent on the tenant to show that it was not delivered. *Berkshire Ins. Co.* v. *Sturgis*, 13 Gray, 177. *Concord Bank* v. *Bellis*, 10 Cush. 276. The indorsed memorandum is admissible also for the purpose of proving a delivery, as it is a declaration of the grantor made against his interest, and amounts to an admission

of delivery. It proves that the deed was and had been for ten years in full force, and had been acted under by the covenantor to stand seised. And it declares that the deed shall remain in force for the further use of Walter. This all tends to show a delivery. No other delivery than a record was necessary to make a good delivery to the grantee. He was a lunatic and in an asylum, and a deed to a lunatic passes and vests a good title, despite his incapacity to give an intelligent assent to the deed. *Concord Bank* v. *Bellis*, 10 Cush. 276, per Shaw., C. J. 4 Kent Com. (12th ed.) 446. 2 Bl. Com. (Wend. ed.) 291, 292. 2 Washb. Real Prop. 567, and cases cited. The principle that persons are presumed to accept grants which are beneficial to them is well recognized, and applies with much greater force to persons incapacitated to assent than it does to persons who are simply ignorant of the execution of the instrument for their benefit. 2 Bl. Com. (Wend. ed.) 309, note 27, and cases cited. *Church* v. *Gilman*, 15 Wend. 656. 2 Washb. Real Prop. 583. It is also contended earnestly that a deed which operates as a covenant to stand seised to uses is sufficiently delivered by the covenantor's placing it on record and then proceeding to execute the use. Whether this, as a general proposition, be true or not, there is imperative reason for holding such a deed to be duly delivered when the *cestui que use* is laboring under an incapacity ; and the use is created out of tenderness toward that incapacity. 2 Bl. Com. (Wend. ed.) 338. In covenants to stand seised, it is the statute and not delivery of the deed which takes the seisin out of the covenantor and executes it with the use in the *cestui que use*. 2 Washb. Real Prop. 129. In such case the grantor acts " with the intention that it (the deed) shall operate immediately as a transfer of title," and " it is placed at the disposal of the grantee or of some other person in his behalf," to wit : the person covenanting to stand seised to the use of the grantee and proceeding to execute his covenant. *Hawkes* v. *Pike*, 105 Mass. 560.

3. The demandant is entitled to the small lot. Mrs. Hill, as the tenant of Isaac Hill, occupied only the house and large lot. She cultivated and built upon the small lot, thus occupying it from 1819 to 1834, and she did this claiming to own it herself. Such a possession was adverse against all the world. The tenant is a stranger, against whom the possession of Mrs. Hill, transmit-

ted by deed to the demandant, is fully sufficient to maintain this action. *Sparhawk* v. *Bullard*, 1 Met. 95. *Slater* v. *Rawson*, 6 Met. 439. *Hubbard* v. *Little*, 9 Cush. 475.

*G. A. Torrey*, for the tenant.

WELLS, J. The demandant's title to the large lot depends upon the question of delivery of the deed of 1834 from Isaac Hill. The burden rests upon the demandant to prove the fact of delivery. The auditor reports certain matters of evidence from which a delivery might be inferred. *Moore* v. *Hazelton*, 9 Allen, 102. *Howe* v. *Howe*, 99 Mass. 88, 97. But it is not a necessary inference, and the auditor has not found it as a fact. It is not clear to us that the auditor has not found the contrary. He " ruled that the deed conferred no title upon any of the persons named therein, and that the demandant showed no title to the large lot." The case is submitted upon an agreement that the auditor's report shall " be taken as a statement of facts." Taking this ruling or finding by itself, it would imply that there had been no sufficient delivery to confer title upon the grantee, Walter R. Hill; and that fact would be fatal to the demandant's claim of title to the remainder.

But if this statement of the auditor's report should be construed as referring only to the persons under whom, as grantees of a remainder, the demandant seeks to make out his title, we are of opinion that it was correct as a ruling upon the construction and legal effect of the deed.

The only grant which the deed contains is that of a life interest to Walter R. Hill. The clause intervening before the habendum is, in all its characteristics, a declaration of trust; which, if not void for repugnancy, would seem to qualify the preceding grant into a mere equitable estate. Its whole scope contemplates not only control of the property by the grantor, but the right and power of disposal, and the application of the principal as well as income to the support of Walter R. Hill. Following such provisions in relation to the disposal and appropriation of the property during the life of Walter, the further provision that "if not necessary for his maintenance, the same property shall fall in equal portions to each of my sisters, . . . . or to their children, if they shall be living after his decease," cannot well be construed as a grant of a legal estate in remainder.

The habendum and covenants will not serve to give it the effect of a conveyance of the legal estate, if only an equitable interest is defined in the premises. *Chapin* v. *First Universalist Society in Chicopee*, 8 Gray, 580.

The auditor also ruled that the demandant showed no title to the "Hill lot." And the facts stated by him show none. The demandant claimed title in Hannah Hill, by possession ; and it was conceded that, if Hannah Hill had a title, it had been acquired by the demandant. But if the occupation by Hannah Hill had been of such a character as to support a claim of title by adverse possession, it does not appear to have continued for a sufficient length of time to perfect it, being only from 1819 to 1834. Nothing else appears to make out any title for the demandant. Mere possession by Hannah Hill in 1834, not followed by possession in the demandant or in any intermediate grantee from Hannah Hill, will not sustain a writ of entry in 1872. There must therefore be                  ·    *Judgment for the tenant.*