Byrd v. Phillips.

L. BYRD *v.* ABNER PHILLIPS *et al.*

( *Knoxville.* September Term, 1907.)[1]

1. **GRANTS.** Of the State reciting that it includes within its ex-
terior lines prior legal claims operates to exclude them.

The State's grant of land described by metes and bounds, and
after reciting the quantity, concluding as follows: "Including
within the above calls of prior legal claims, 1,000 acres," ex-
cludes by implication from the operation of the grant all lands
within its exterior lines shown to have been granted by prior
valid grants. (*Post, pp.* 18-20.)

Cases cited and approved:   Bleidorn v. Pilot Mountain C. & M.
Co., 89 Tenn., 204.

2. **DEEDS OF CONVEYANCE.** Description by reference to other
prior deeds or grants; it must be specific, when.

Where a deed of conveyance of land refers to a prior ·deed or
grant for description, without more or without setting out the
property by metes and bounds, it incorporates into itself the
description contained in that deed or grant; but, if the later
deed also sets out the metes and bounds of the land conveyed
by it, the reference to the prior deed or grant must be definite
and specific, in order to control the specific description which
in itself is plain and unequivocal. (*Post, pp.* 20-23.)

Cases cited and approved:   Bleidorn v. Pilot Mountain C. & M.
Co., 89 Tenn., 212; Melvin v. Proprietors, etc., 5 Metc. (Mass.),
15; Dana v. Bank, 10 Metc. (Mass.), 250; Whiting v. Dewey,
15 Pick. (Mass.), 428; Raymond v. Coffey, 5 Ore., 132; Herrick
v. Hopkins, 23 Me., 217; Gano v. Aldrich, 27 Ind., 294; McEowen
v. Lewis, 26 N. J. Law, 451; Jones v. Smith, 73 N. Y., 205.

Byrd v. Phillips.

3. **ADVERSE POSSESSION. Must be of some part of the land in dispute; grantee's possession of the land owned by the grantor is not a constructive possession of the land not owned by him, though conveyed.**

The possession of land, in order to produce a bar, must be an actual adverse possession of some part of the land in dispute. A possession not within the bounds of the disputed part is not sufficient, though it be within the bounds of the possessor's deed. So, where a deed embraces land, some of which is not owned by the maker, and the conveyee enters upon that part only to which the conveyor had title, his possession of such part does not give him constructive possession of the other part not owned by his conveyor, so as to operate as a disseizin of the real owner thereof, and to make effective the bar of the statute of limitation. (*Post, pp.* 23-25.)

Cases cited and approved: Napier v. Simpson, 1 Ov., 453; Talbot v. McGavock, 1 Yerg., 262; Smith v. McCall, 2 Humph., 163; Stewart v. Harris, 9 Humph., 716.

4. **TAX DEED. Must be authorized by statute; made under Acts 1873, ch. 118, secs. 67 and 68, is void.**

The authority to issue a tax deed must be found in the statute, and a deed executed without such authority conveys no title. The Code provision authorizing the tax collector making the sale of lands for the nonpayment of taxes, or any of his successors, to make a deed or deeds to the purchasers of the several tracts sold, or to any persons whom they might severally designate, was repealed, by necessary implication, by Acts 1873, ch. 118, secs. 67 and 68, which act covered the whole field of the assessment and collection of taxes, and by necessary implication repealed statutory provisions regulating these matters prior thereto. So, a tax deed made by the collector to a purchaser of land sold under said act is void. (*Post, pp.* 25-29.)

Acts cited and construed: Acts 1873, ch. 118, secs. 67 and 68.

5.  **ADVERSE POSSESSION.**  **Must be under registered deed duly probated and authenticated for registration since Acts 1895, ch. 38; possession before and since said act.**

The statute (Acts 1895, ch. 38) requiring the adverse possession of land for seven years to be under a registered instrument of conveyance in order to create the bar of the statutes of limitations refers to registered instruments duly probated and authenticated for registration. There can be no effective adverse possession under a deed registered without proper certificate of probate or acknowledgment. Adverse possession for three or four years before the enactment of said statute under a deed spread upon the register's record, without authority because the certificates of acknowledgment were fatally defective, cannot be perfected by the continued adverse possession after the enactment of said statute. (*Post, pp.* 29, 30.)

Acts cited and construed:  Acts 1895, ch. 38.

6.  **EVIDENCE.**  **Admission of ancient documents found in a custody consistent with their genuineness.**

One of the grounds for the admission of an ancient document over thirty years old as evidence is that it must be found in the proper custody, that is, in a place consistent with its genuineness. (*Post, p.* 32.)

7.  **SAME.**  Same.  **A certified copy of an ancient document is not prima facie evidence of its recitals, when.**

A certified copy of a deed purporting to be over thirty years old, registered only five or six years before the trial, accompanied with no explanation of the custody of the original during the interval between its assumed execution and its registration, is not admissible in evidence as an ancient document so as to make all its recitals *prima facie* evidence, even though it be conceded that the original would be entitled to such probative effect. (*Post, pp.* 32, 33.)

Byrd v. Phillips.

8. **DEEDS OF CONVEYANCE. By personal representative to one not appearing to have a right to demand it is not authorized.**

A personal representative is not authorized to execute a deed under section 3692 of Shannon's Code, where a deed was made to the decedent and another as individuals, and not in trust, in pursuance of a collateral agreement in writing between eleven persons, including among them the said grantees, whereby land purchased by them (the eleven partners) was to be conveyed to said grantees in trust for the use and benefit of all of said partners, although the partnership was subsequently merged into a chartered corporation, and the deed was made by the personal representative of the decedent to said corporation, especially where there was nothing to show that the members of the partnership ever transferred their rights in the land to the corporation or that they ever demanded the execution of the deed to it. (*Post, pp.* 30-36.)

Code cited and construed: Sec. 3692 (S.); sec. 2832 (M. & V.); sec. 2025 (T. & S. and 1858).

---

FROM SCOTT.

---

Appeal from the Chancery Court of Scott County.— HUGH G. KYLE, Chancellor.

LUCKY, SANFORD & FOWLER, for complainant.

YOUNG & YOUNG, and E. G. FOSTER, for defendants.

120 Tenn—2

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

This is an ejectment bill, filed to recover a tract of land lying in Scott county, embraced in entry 777, upon which was issued a grant by the State to T. B. Eastland, No. 21937.    Complainant through a line of intermediate conveyances deraigns title from this grant.

The defendants Hall, Schaver, and Cross rely for defense upon the statute of limitations of seven years, and, in addition, that independent of the statute they have a good and indefeasible title to all the lands within this grant.

In order to a proper understanding of the points raised for and against the defense of the statute of limitations, it is necessary to give the contents of some of the instruments found in complainant's chain of title, and also of certain of those through which defendants deraign their title, together with a statement of facts shown by the record upon which is rested this defense of adverse possession.

As stated above, the title of complainant originates with entry 777, upon which the State, on June 30, 1838, granted to T. B. Eastland the tract of land in controversy, describing it by metes and bounds, followed by the recital that it contained four thousand acres.    The description then is concluded as follows:    "Including with the above calls of prior legal claims, 1,000 acres."

Prior to the issuance of this grant, the record shows

that within its exterior lines there had been issued by the State the following grants.    Grant No. 20389, to Blackburn Thompson, for 50 acres, dated November 2, 1836; grant No. 20478, for fifty acres, to Richard Griffith, on December 10, 1836; and grant No. 20083, to Robert Lawson, for one hundred and fifty acres, dated September 20, 1836.    The first two of these grants are distinctly located on the map of the survey made for the complainant.    While more difficulty is encountered as to the grant issued to Robert Lawson, yet we think the weight of the testimony is that its location is as shown on this map and as claimed by the complainant, and that it is one of the grants excluded by implication from the operation of grant No. 21937.    *Bleidorn* v. *Pilot Mountain C. & M. Co.,* 89 Tenn., 204, 15 S. W., 737.

It is contended by the complainant that by a series of intermediate conveyances the title acquired by the grantee, Eastland, was vested in the East Tennessee Coal & Iron Company, and that this company, on the 8th of February, 1888, made a deed to him in which it conveyed large bodies of land situated in the counties of Scott, Anderson, and Campbell, in this State, and, among others, the tract in question, describing it as follows: "Situated    .    .    .    in Scott county, and known as entry 777 in said Campbell county, grant 21937, from the State of Tennessee to T. B. Eastland,    .    .    .    beginning at a maple, dogwood, and beech, the northwest corner of the tract, herein described as entry 759; thence with the line of same south 894 poles to a black gum

and white oak; thence west 894 poles, with the line of the tract herein described as entry 776, crossing New river at a white oak; thence north 894 poles to a stake in an old field west of New river; thence east, crossing New river at 70 poles, crossing a branch at 284 poles, crossing a wagon road at 574 poles, crossing Paint Rock creek 844 poles, in all 894 poles to the beginning."

The defendant deraigns title to a tract of 1,150 acres, which lies within the exterior lines of grant No. 21937, through mesne conveyances, from one Jas. McDonald. On the 14th of June, 1858, McDonald executed a deed to Alexander Armstrong, by which he conveyed to him this tract, describing it by metes and bounds. Subsequently it was sold by the clerk and master of the chancery court of Scott county under a decree pronounced in the case of *Armstrong et al.* v. *Petree et al.*, and a deed was made by that officer to its purchasers, P. L. Woodworth and David Logan, on the 30th of November, 1880. The record further shows that by a deed properly executed, bearing date March 1, 1845, James McDonald became the owner of the fifty acres covered by the Blackburn Thompson grant No. 20389, and on the 21st of November, 1842, Richard Griffith conveyed to him the fifty acres covered by grant No. 20478, and also fifty acres off the south end of entry No. 715, upon which grant No. 20083 issued to Robert Lawson, of date September 20, 1836. On the 31st of July, 1854, there was issued to McDonald grant No. 29162 for five hundred acres, and on October 1, 1857, there was issued to him

another grant, to wit, No. 29984, for five hundred acres. So it was, at the time of his conveyance to Armstrong, he was the owner of record of 1,150 acres, made up of these different tracts, all lying, as has been stated, within the exterior lines of grant No. 21937. The record makes it clear that several years prior to 1860, during the time that McDonald was such owner, and subsequent thereto, there were possessions upon them, and that these possessions were made by him and his successors in title, setting up claim to the whole tract of 1,150 acres. It also appears that among these successors, who held such possession and set up claim of title, were Woodworth and Logan, who, as did their predecessors, claimed ownership to the limits of the McDonald tract. We think it clear that this possession continued unbrokenly, and was in existence at the time complainant acquired his title in 1888. To meet this condition, however, complainant insists, and we think this insistence is well sustained, that the great weight of the testimony is that these possessions were within the Thompson and Griffith grants and the fifty acres taken off the south end of the Robert Lawson grant, and that as these grants being prior in point of time, were excluded from the operation of grant No. 21937, issued to Eastland, possessions on them were not adverse to that grant, and cannot be relied upon to make out the defense raised upon the statute of limitation.

It is practically conceded that the rule relied upon by the complainant could have been invoked by his ven-

dor, because it took title under a deed which simply referred to the grant issued to Eastland for description, without undertaking to set out the property by metes and bounds; for it is well settled that a reference to the prior deed or grant for description, without more, incorporates the description of that deed or grant in the later instrument. 2 Devlin on Deeds, section 1020, and cases cited in note 2. It is contended, however, by the defendants, that this rule cannot be invoked by complainant, as his deed from the East Tennessee Coal & Iron Company, made in 1888, while referring to the entry and grant, follows with a description of the land conveyed by metes and bounds, and has neither words of inclusion nor exclusion. This being so, it is argued that, from the particular description given, it was the purpose of the vendor to convey and of the vendee to acquire the title to the whole tract of land within these metes and bounds. The rule on this subject, with its limitations, is well stated on page 882, vol. 5, of Cyc., in these words: "When land is described in a grant or conveyance by reference to another grant or conveyance, the description contained in the latter is regarded as adopted by and incorporated into the former, and the land therein described will pass. The reference, however, must be definite and specific, in order to control a specific description which in itself is plain and unequivocal." The reports furnish many illustrations of the general rule and its limitation. *Melvin* v. *Proprietors, etc.,* 5 Metc. (Mass.), 15, 38 Am. Dec., 384; *Dana* v.

*Middlesex Bank,* 10 Metc. (Mass.), 250; *Whiting* v. *Dewey,* 15 Pick. (Mass.), 428; *Raymond* v. *Coffey,* 5 Ore., 132; *Herrick* v. *Hopkins,* 23 Me., 217; *Gano* v. *Aldrich,* 27 Ind., 294; *McEowen* v. *Lewis,* 26 N. J. Law, 451; *Jones* v. *Smith,* 73 N. Y., 205.    In *Bleidorn* v. *Pilot Mountain C. & M. Company,* 89 Tenn., 212, 15 S. W., 737, is found a statement *arguendo* to the same effect.  See, also, 2 Devlin on Deeds, sections 1038, 1039.

The defendants, however, we are satisfied, notwithstanding the character of complainant's deed, are in no better condition to avail themselves of the statute of limitation as against complainant than they would have been against complainant's vendor.  Giving full effect to the particular description contained in the deed which complainant took from his vendor in 1888, it was simply a case where that vendor undertook to convey more property than he owned, while the possession relied upon to make out the case of adverse holding at the time existed and continued to exist upon land lying within the limits of the deed, but which neither the grantor nor grantee claimed.  In 3 Washburn on Real Property, p. 748, the author embodies in the context the principle which controls in this case; the same having been announced by the New Hampshire court, to wit:  "Where a grantor embraced land to which he had no title in the same deed with that to which he had title, and his grantee entered upon and occupied that part only to which the grantor had title, it did not operate as a disseisin of the owner of the

other land described in the deed, although such deed was duly recorded." So in Tiedeman on Real Property, section 696, it is said: "If the title was only void as to a part of the land conveyed, the occupation of that part to which the grantor had title will not give the grantee constructive possession of the other part to which he has no title, so as to disseise the real owner."

Our cases on this subject, with the exception of now and then an inadvertent *dictum contra,* support the proposition relied upon by the counsel of complainant, and which is stated by him in these words: "No one can obtain the benefit of the statute of limitations unless he has actual possession of lands, the title to which is vested in another and not in himself, and that the converse is true, that no one can be barred by virtue of the statute of limitations unless some part of the land to which he has a real title is actually possessed by another." The first case in which it was mentioned that it was essential to the defense of adverse holding under the statute of limitations that the possession shall be upon the conflict between the titles was that of *Napier's Lessee* v. *Simpson,* 1 Overt., 453, where it was said: "Possession of land, so as to produce a bar, must be an actual possession of some part in dispute. Cultivation of part of defendant's claim not within the bounds of the disputed parts is not sufficient. . . ." This statement, in the form of a *dictum* in that case, was afterwards upon mature consideration, settled as the law in the case of *Talbot* v. *McGavock,* 1 Yerg., 262, where

both Special Judge Smith, and Judge Catron delivered separate, but concurring, opinions, from which there was a dissent by Judge White. The correctness of the principle adopted in *Talbot* v. *McGavock* was called in question in *Smith* v. *McCall's Heirs,* 2 Humph., 163; but in the opinion delivered by Reese, J., the court not only refused to overrule the former case, but expressed the view that the principle there anounced was correct. In *Stewart* v. *Harris,* 9 Humph., 716, in announcing the same principle, the court said: "If there be an actual, mixed, or concurrent possession, the well-settled principle is that the legal seisin or possession shall be adjudged in him who has the title; and it is equally well settled that the constructive possession which the law annexes to the better title is in the true owner, if there be no adverse possession until an actual disseisin or adverse possession by another."

So it is we are satisfied that the possession, confined as it was to the limits of the Thompson and Griffith grants and the fifty acres off the south end of the Robert Lawson grant, of which McDonald and his successors in title were the true owners, worked no disseizin of the complainant of any part of the 1,150 acres outside of the boundaries of these three pieces of property.

The defendant, however, undertook as against the complainant to maintain title to the whole of grant No. 21937. This claim is rested upon a deraignment through intermediate conveyances to a deed executed by Thomas J. Lloyd, tax collector for the county of

Scott, to Frederick W. Gill, on the 19th of August, 1874. This deed recites, among other tracts, that "entry 777, grant 21937, for 4,000 acres," was duly advertised for sale on the 1st day of June, 1873, for the unpaid taxes of the year 1872, and that at the sale made by him on that day the same was sold to F. W. Gill, who, having paid the purchase price, was entitled to a conveyance, which was accordingly made. The defendants insist that under this conveyance, and the intermediate conveyances referred to, they have a perfect title to the whole of this property, and, if not, then they have acquired title by the adverse holding which has just been made the subject of discussion.

The contention that a perfect title was communicated to Gill by virtue of this sale and deed, and through mesne conveyances to the defendants, is unsound. The sale in question was made under the authority of chapter 118, p. 168, of the Acts of 1873, which covered the whole field of the assessment and collection of taxes, and by necessary implication repealed statutory provisions regulating these matters prior thereto. Previous to the passage of this act, in case of delinquency in the payment of taxes on real estate, the tax collector was required to report such delinquency to the circuit court at any term after the first of the year following the year for which the taxes remained unpaid. Upon the report thus made a judgment was entered directing a sale of the land so delinquent, and thereupon the clerk issued an order of sale and delivered the same to the

collector, who, having advertised as required by statute, sold these lands to the highest bidder. Under the same provisions of the Code, the collector making the sale, or any of his successors, could make a deed or deeds to the purchasers of the several tracts so sold, or to any persons whom they might severally designate. But by sections 67 and 68, p. 186, of the Acts of 1873, in question, the system in respect to the vesting of title in the purchaser at a tax sale was radically changed. By section 67 it was provided that when a sale took place the tax collector should give the purchaser a certificate of his purchase, while by section 68 it was enacted "that when said sale shall have been completed, and within thirty days after the first Monday of July of said year, the tax collector shall certify all the said sales to the circuit court of his county. . . . Said court, if in session, or if not in session then at the next term of said court, shall enter said sales of record as valid judgment, vesting title to the property so sold in the purchaser thereof; and writs of possession shall in all cases be granted to the purchaser during said term, or any time on demand, whether said purchaser shall be any person, company, firm, or corporation, or the treasurer of the State." We think it clear that the deed from the tax collector, Lloyd, to Gill, in view of section 68 of this act, was absolutely void, because unauthorized by it. We understand it to be well settled "that the authority to issue a tax deed must be found in the statute, and a deed executed with-

out such authority conveys no title." 27 Am. & Eng.
Enc. of Law (2d Ed.), p. 962.

The defense of the statute of limitations under this
chain of conveyances as to the entire grant must fail for
the same reason and upon the same authorities which
were set out in disposing of this defense as to the tract
of 1,150 acres.

But defendants further insist that by their tenant
they held another possession of more than seven years
inside grant 21937, but outside the Thompson, Griffith,
and Robert Lawson grants, which was adverse to com-
plainants, and that under the deeds just referred to,
purporting to convey a fee, they were vested with title
to the exterior lines of grant 21937.

The facts on which this contention rests are that on
the 2d of September, 1889, Schaver, Hall, and Frisbee
conveyed to Robert Birge fifty acres in the northwest
corner of the 1,150 acre tract. At the time of this sale
the evidence tends to show that his vendors agreed that
Birge might inclose certain land outside of his
lines, but within grant 21937, upon the condition that he
would take possession for them under their claim of
title to the whole of that grant, and at the same time
watch and prevent depredations upon their lands. The
evidence further tends to show that under this agree-
ment Birge extended his inclosure so as to take in about
one and one-half acres of his vendors, and had been hold-
ing this small tract for them, openly and notoriously, up
to the filing of the bill in this cause. According to Birge

this inclosure was made and a barn and other improvements were placed upon it about "thirteen years and a little over" before his deposition was taken in the case, which was the 31st of January, 1905. This testimony carries the inclosure back to the last of the year 1891, or the beginning of the year 1892. As this suit was instituted July 1, 1903, a sufficient period had elapsed to make good this defense, were it not for a matter now to be mentioned. The deeds under which the defendants claim title, while spread on the register's record in Scott county, were not legally there. The certificates of acknowledgment of these deeds wre fatally defective. On the 13th of February, 1895, chapter 38, p. 54, of the Session Acts of that year was passed by the legislature. This act materially amended the statute as to the effect of adverse possession of real estate for seven years. Before this amendment registration was not necessary to give effect to such holding; but after the amendment registration was essential. The registration referred to in this amendatory act is one made of an instrument duly authenticated. Without such authentication, an instrument otherwise authorized to be registered has no place in the register's record.

The act in question took effect, by its terms, from and after its passage. It thus appears that only three or four years of adverse holding had expired before this act went into operation, and the time thereafter cannot be relied upon either to vest title, or as a defense against

the owner of the true title seeking possession. So it is this contention of the defendants must be overruled.

The question then remains as to the right of complainant to maintain this suit for the land embraced in grant 21937 outside of the 150 acres, made up of the Thompson and Griffith grants and the fifty acres off the south end of the Robert Lawson grant. On the 4th of July, 1855, eleven persons, including T. H. Calloway and Thomas Lyon, entered into an agreement in writing, in which it is recited that the parties to the agreement are members of the Cumberland Coal & Iron Company, and that, "for the purpose of giving unity and efficiency to its operations," they constituted and appointed Thomas H. Calloway and Thomas C. Lyon "trustees, in whose names, as trustees, the title to all the properties purchased for the use and benefit of the company should be taken."

This company was not incorporated, but was an aggregation of individuals, in the nature of partnership, who combined their capital with a view of acquiring, as is inferable from the record, mineral lands in the Cumberland Mountains, the titles to which, for convenience, were to be taken and held by the parties named as trustees. On the 15th of October, 1855, one Charles F. Mayer, of Baltimore, Md., by his attorney in fact, made and delivered a deed to Thomas C. Lyon and Thomas H. Calloway, for conveying to them immense bodies of land situated in the counties of Scott and Campbell, in

this State, and amongst these was entry 777, grant No. 21937.

This deed does not purport to convey these lands to the grantee in trust. Nowhere is it suggested in the deed that they are to hold this property as trustees. To the contrary, it is a conveyance to them as individuals, with a special warranty of title to them, "their heirs and assigns, forever."

It was assumed by the parties in the court below as a fact that the East Tennessee Iron & Coal Company was a corporation organized under and by virtue of sections 6 and 7 of a special act of the legislature of Tennessee passed March 12, 1858. All the parties signing the agreement of July 4, 1855, referred to above, save one, with three persons in addition, who were strangers to this agreement, were named as incorporators of this company. Lyon and Calloway subsequently died. The heirs of Lyon made a deed to the East Tennessee Iron & Coal Company, vesting in it all the title their ancestor took under the Mayer deed. At his death Thomas H. Calloway left a will, in which he nominated his two sons, Joseph and Luke, as executors. These persons, upon the probate of the will, were duly qualified as such executors. No right of control or of conveyance of the testator's real estate was given by the will to these parties. However, on the 30th of December, 1873, Joseph Calloway, assuming the right to do so, executed a deed to the same company, undertaking as executor to convey to it all the interest which his ancestor took under the

deed from Chas. F. Mayer.  This deed contains the recital that the testator, in conjunction with T. C. Lyon, held that property in trust for "the copartnership, then formed under the name of the Cumberland Coal & Iron Company, until a charter could be obtained for forming a joint-stock company, which was the object of such association," that "said charter was afterwards procured from the State of Tennessee and the company is now organized under the name of the East Tennessee Iron & Coal Company," and that upon the demand of that company the deed was accordingly executed.  On the trial below this deed, when offered by complainant as a muniment of title, was objected to by the defendants, and upon this objection, while admitted by the chancellor, its effect was limited so that it was held to convey alone the interest of the grantor, Joseph Calloway, in the property described therein, to wit, one-eighth of one-half, or one-sixteenth, of the whole tract.

In this holding it is insisted by complainant that the chancellor was in error.  To sustain this insistence the rule as to ancient documents is invoked; that is, that, the instrument being over thirty years old, it is admissible as evidence of all of its recitals.

One of the grounds for the admission of a document as evidence under this rule is that "it must have been found in the proper custody; that is, in a place consistent with its genuineness."  1 Greenleaf on Evidence, section 575b; 2 Elliott on Evidence, section 1328.

But the deed here, offered and relied upon by com-

plainant, is not an ancient document. It is a copy of a deed purporting, it is true, to be over thirty years old, received, however, for registration, according to the certificate of the register of Scott county, as late as the 27th of April, 1901. Not only did the complainant content himself with producing the copy, but made no effort to account for the custody of the original during the time intervening between its assumed execution and its registration. We think it clear, even if the law be, as insisted, as to the probative effect of the original, that the rule invoked does not apply to such a document as the one offered, and that its recitals cannot be relied upon to make a *prima facie* case.

Nor do we find there is any evidence in this record to warrant the contention that this deed was properly executed, under section 3692 of Shannon's Code; in other words, that it was a valid exercise of a power which Thomas H. Calloway should have exercised in his lifetime. As has been seen, there is nothing in the Mayer deed upon which a trust can be raised, or from which a power in the grantees can be implied. Certainly there is nothing in the record which shows that the grantees in that instrument held the property in trust for the East Tennessee Coal & Iron Company, incorporated, as it was, several years after the making of the Mayer deed. It may be, and from the record we think it is inferable, that this property was held in trust by Lyon and Calloway for themselves and associates in the

120 Tenn—3

partnership known as the Cumberland Mountain Company. The record, however, does not show that these parties ever transferred their rights in this property to the corporation in question, or that they ever demanded this deed should be executed. The only connection or relationship between the individuals, who signed the agreement of 1855 and who constituted the company known as the Cumberland Mountain Coal & Iron Company, and this corporation, created in 1858, is found, if found at all, in a statement made by Mr. Chas. Seymour, which, by agreement, was admitted as evidence in the cause. This statement seems to have been made in connection with a copy of the original agreement, signed by these copartners, and is as follows:

"Knoxville, Tennessee, January 25, 1906.

"I received the original document of which the foregoing is a true copy from two of the signers, McGhee and Calloway, in the year 1869, and which has been in possession of the officials of the East Tennessee Iron & Coal Company much of the time since I have had access to it, and for the last fifteen years I have held it as attorney for L. Byrd. I know well all of signatures, except Congdon and Churchwell, and the genuine signatures appear on the original instrument. The Cumberland Mountain Company was a partnership until organized, after charter procured, into a company known as the East Tennessee Iron & Coal Company, and this paper passed with all title papers of that company.

"[Signed]                     CHARLES SEYMOUR."

If it be, as we think it is, inferable from the record, as has been already conceded, that Lyon and Calloway did take the title under the Mayer deed in trust, yet the beneficiaries of that trust were their associates in the private enterprise, as evidenced by the agreement of 1855, and if any parties could call upon the real or personal representatives of these trustees, or any of them, to execute a conveyance under the authority of Code, section 3692, it would be those persons, or their representatives, with whom the agreement was made. It cannot be held, upon the statement of Mr. Seymour, that, because the original of the agreement of McGhee, Calloway, and others had passed into the custody of the officials of the East Tennessee Coal & Iron Company after it was organized as a corporation, this mere fact authorizes the conclusion that the interest of the parties to that agreement in the property concerned had passed into the corporation, so as to warrant it in calling for a conveyance from the trustees or their representatives.

This being the condition of the record, we also think the complainant cannot avail himself of the doctrine of presumption which is embodied in the following paragraph of the brief and argument of his counsel: "Since said Lyon and Calloway were vested with the legal title of this property only as trustees, for the benefit of their partners, or of such corporation as might be organized to take this property, and since it was their duty to execute a deed for the same to such company as might be organized, the court should conclusively presume that

they performed their duty and executed a conveyance of the legal title to the East Tennessee Iron & Coal Company, upon the organization of the same."

The infirmities of the record in failing to show a contract connection between the beneficiaries of the trust, created in 1855, and the corporation in question, which precluded the complainant from securing the benefit of the Code section, equally prevented him from securing aid from the presumption here referred to. We are satisfied that as to the Calloway deed, in fact and in law, it was only effectual to convey the individual interest of the grantor to the grantee, the vendor of complainant in the property described, and that in so limiting it the chancellor was correct. The result is that a decree will be entered dismissing complainant's bill in so far as the one hundred and fifty acres, embracing the small tracts already named, are concerned, and as to seven-sixteenths of all of grant No. 21937, lying outside the lines of the small tracts. The complainant has established title, and is entitled to joint possession with the defendants of nine-sixteenths of this grant, which lie outside the limits of these tracts.

The costs of this court and of the court below will be divided between complainant and the defendants C. C. Cross, Edward Schaver, and Edward S. Hall.