Strafford, Mar. 7, 1944. } No. 3449.

IDA FINLAY *v.* ROBERT W. STEVENS *& a.*

*Keefe & Keefe*, by brief, for the plaintiff.

*Hughes & Burns* and *Walter A. Calderwood (Mr. Calderwood* orally), for the defendants.

PAGE, J. The writ of entry is peculiar in two respects. First, the remedy seems to be recognized little, if at all, outside Massachusetts, New Hampshire, and Maine. Second, the remedy is essentially possessory and involves directly only the right of possession. *Public Service Company* v. *Voudomas*, 84 N. H. 387. By the very allegation of the writ, the defendant is in actual possession, and the immediate issue is whether the plaintiff has the right to possession. Only at times, and incidentally, are issues of title raised. There are cases in which title never comes in question. If A disseize B, and later C disseize A, A may maintain a writ of entry against C unless C can show a better right of possession. It may be that A has no title at all. If so, his lack of title is wholly immaterial, since the primary test is whether the plaintiff had possession under a claim of freehold and was dispossessed by the defendant. *Gibson* v. *Bailey*, 9 N. H. 168, 174; *Breck* v. *Young*, 11 N. H. 485, 491. On the other hand, the weakness of the defendant's title is wholly immaterial if the plaintiff can show no right of possession or no dispossession by the defendant. *Cheever* v. *Roberts*, 82 N. H. 289.

That the primary purpose of the writ of entry is not to try title, and to cast the defendant if he can show no title, should be plainly apparent from the necessary allegations in the writ. The plaintiff must allege two facts and sustain the burden of proving them: (1) that, within twenty years of the date of the writ, he or one under whom he claims, was seized of the demanded premises, and (2) that within the same time the defendant disseized the plaintiff or his predecessor in title. *New Parish* v. *Odiorne*, 1 N. H. 232; *Tilton* v. *Stanyan*, 57 N. H. 489; *Tappan* v. *Tappan*, 36 N. H. 98; *Rogers* v. *Company*, 137 Me. 166; *Stetson* v. *Grant*, 102 Me. 222; *Wyman* v.

*Brown,* 50 Me. 139; *Sparhawk* v. *Bullard,* 1 Metc (Mass.), 95, 103; *Wells* v. *Prince,* 4 Mass. 63.

The very definition of seizin shows that possession is the nub of the remedy. Seizin is possession coupled with a claim of freehold. *Towle* v. *Ayer,* 8 N. H. 57; *Straw* v. *Jones,* 9 N. H. 400; *Blaisdell* v. *Martin,* 9 N. H. 253; *George* v. *Fisk,* 32 N. H. 32; *Tappan* v. *Tappan, supra; Edmunds* v. *Griffin,* 41 N. H. 529. A disseizin is more than a mere entry; the defendant must actually have gained possession of the premises, actually putting the plaintiff or his predecessor out of possession. *Wendell* v. *Blanchard,* 2 N. H. 456.

The necessities mentioned seem to have been overlooked below. Conceding that the possession that will clothe a plaintiff with seizin may be either actual or constructive, it is always necessary to inquire, on a motion for a directed verdict, whether there is any evidence of record that the plaintiff has ever had possession of either sort. The plaintiff in this case claims possessory rights which she says are derived in connection with her chain of title. For the immediate purpose her chain of title is useful in explaining the freehold claim under which any possession she has shown may be characterized. For the present, the plaintiff's chain of title may be taken to have originated in 1912 in M. Joseph Keeley, who in 1919 deeded to Frank E. Mulligan. Mulligan conveyed to John J. Brennan in 1919, and Brennan in 1921 to the plaintiff and her husband as joint tenants with rights of survivorship. The plaintiff's husband is now dead. A grantee under a deed is not presumed to enter and take possession, but if he does in fact enter he is presumed to enter according to the extent of his title. *Graves* v. *Company,* 44 N. H. 462, 464.

There is only doubtful evidence that the plaintiff or her immediate grantor had actual possession of the disputed premises and was dispossessed within twenty years of the undisclosed date of the writ. Unless she shows such possession and dispossession, recovery is impossible. The evidence is vague and indecisive and is not followed by the necessary particular findings. The general finding that the plaintiff and her predecessors had possession under claim of right may, as far as appears, be based upon (1) a nonexistent presumption of entry and occupation, or (2) upon the erroneous supposition that they had constructive possession.

In 1886 Abbott L. Littlefield conveyed to Aaron R. Littlefield two tracts designated in the record as tracts C and D. Tract D lies between tract C on the west and land of the defendants on the east.

It is a portion of tract D, contiguous to the defendants' land, that is in dispute. Aaron R. Littlefield died in 1908. There is evidence that he had possession of both tract C and tract D up to the time of his death and it may be assumed that he died seized of both of them. The only evidence of descent from Aaron is parol testimony that "he left his property to Betsey," his widow. Assuming, but not deciding, the sufficiency of this evidence, Betsey could acquire seizin of both tracts. She lived in a house on tract C. She induced Sophie Johnson, a foster daughter but not shown to be her putative heir-at-law, to come with her husband to live with her. On April 17, 1909, Betsey gave to Sophie a deed of a tract described by metes and bounds. The tract thus described is tract C. Tract D was not described. The deed was conditioned upon Sophie supporting Betsey for life and giving her a suitable burial after death. Betsey died early in 1912. Sometime between 1908 and 1912, the year being wholly uncertain, Sophie's husband Leighton Johnson made a garden on tract D. That is the only evidence of actual possession of tract D by either of the Johnsons prior to their conveyance to Keeley in 1912. The referee found that the occupation by Mr. Johnson of tract D was that of himself and his wife "as owners," which may be understood to be equivalent to a finding that they had possession under a claim of freehold.

At this point we come back to the fundamental of seizin, which is possession. We still refer to the actual possession of tract D. It will presently appear that Mrs. Johnson had no title. Where a grantor has no seizin, and no title, seizin does not pass by the grantor's unaided deed; it will pass only if the grantee takes possession. And if the grantee does not take possession until after the supposed disseizor takes possession, the grantee cannot maintain an action even for trespass. *Moore* v. *Hodgdon*, 18 N. H. 144. A plaintiff who is not in possession when he claims to have been dispossessed must rely on the strength of his own title, and not upon the weakness of the defendant's. *Everett* v. *Whitney*, 119 Me. 128. And possession, admittedly in the defendant as of the date of the writ, is better than no title in the plaintiff. *Stetson* v. *Grant*, 102 Me. 222. If the plaintiff's immediate grantor have neither possession nor right of possession by title, such grantor cannot clothe the plaintiff with seizin. And if the plaintiff does not take possession before the defendant does, the defendant's right is good enough until the plaintiff shows a better one. *Tilton* v. *Stanyan*, 57 N. H. 489.

When the plaintiff offers no proof that she has ever been in pos-

session, or even that her immediate grantor had title with possession, she cannot recover. *Graves* v. *Company*, 44 N. H. 462.

Possession by a remote ancestor in title, not followed by possession in the demandant or in any intermediate ancestor in title, will not sustain a writ of entry. *Hastings* v. *Merriam*, 117 Mass. 245. Priority of actual possession by the defendant is markedly in his favor. *Cheever* v. *Roberts*, 82 N. H. 289, 293. Though a remote ancestor in title has both title and seizin, recovery may fail if no seizin is shown in intervening grantors. *Nichols* v. *Todd*, 2 Gray (Mass.), 568, 570.

The next question is whether there is any evidence of constructive possession upon which the plaintiff can establish seizin prior to the defendants' possession. It may be remarked here that the record discloses no finding as to when the defendants' possession was taken. We are therefore thrown back upon the question whether there was any evidence of constructive possession by the plaintiff within twenty years prior to the date of the writ. Since not even the date of the writ is given to us, we must cover a period of thirty years or more, in order to be safe.

The deed from Abbott L. Littlefield to Aaron R. Littlefield, May 26, 1886, described tract C by metes and bounds. It also described tract D by bounds. Both descriptions are complete and unambiguous. Tract D is bounded on the west by tract C. There can be no question about the construction of that deed, nor about the identity and extent of the two tracts. The deed from Betsey E. Littlefield to Sophie Johnson describes tract C precisely as in the earlier deed, to which the scrivener obviously had recourse. The later deed does not describe tract D. Immediately after the description of tract C is this recital: "Being the same premises conveyed to the said Aaron R. Littlefield by deed of Abbott L. Littlefield dated May 26, 1886," with a citation of its record. The deed from Sophie Johnson to Keeley describes tract C in the same terms, but not tract D, with this recital: "And being the same conveyed to Aaron R. Littlefield by Abbott L. Littlefield . . . and the same deeded to me by Betsey E. Littlefield." The deed from Keeley to Mulligan, April 10, 1912, describes tract C only, with a reference to the deed from Mrs. Johnson. The deed from Mulligan to Brennan, April 4, 1919, is precisely the same, with a reference to the deed from Keeley. The deed from Brennan to the Finlays, March 28, 1921, also describes tract C as in the prior deeds, and no other tract, with a recital that it is "the same property" as in the deeds from Keeley to Mulligan and from

Mulligan to Brennan. In each deed in this chain, the particular description is perfectly unambiguous and the bounds given are unquestionable.

The construction of these deeds is for this court. The applicable rule of construction is clear. Where the bound named in a particular description is uncertain, and the description is consequently ambiguous, the reference is competent evidence upon the question of construction. *Clough* v. *Bowman*, 15 N. H. 504. So, also, when the particular description is ambiguous because it is impossible, the reference may be considered. *Peaslee* v. *Gee*, 19 N. H. 273. If there be no particular description, but only a general one, the reference will be rejected if a construction of the general description makes the intention clear. *Bell* v. *Sawyer*, 32 N. H. 72. Ambiguity, if it exists, must be found in the description, or the reference is not competent evidence on construction. The general rule is clear that where, as here, we have a particular description that is certain and definite, it will prevail over the reference. *Peaslee* v. *Gee, supra*, 278.

This court has at least three times held that where the particular description is unambiguous, the reference may not be used as evidence that the grantor intended to convey less than is precisely described. The reference in such case is regarded as intended merely to identify. *Drew* v. *Drew*, 28 N. H. 489; *Stevens* v. *Johnson*, 55 N. H. 405; *Morse* v. *Morse*, 58 N. H. 391.

The rule in Massachusetts is the same. *Whiting* v. *Dewey*, 15 Pick. 428; *Winn* v. *Cabot*, 18 Pick. 553; *Pollard* v. *Ketterer*, 221 Mass. 317, 322. If, however, the reference is "meaning and intending hereby to convey all the real estate which I derived under the deeds" referred to, the construction may enlarge the grant particularly described. *Foss* v. *Crisp*, 20 Pick. 121. The use of the word "all" created a clear inconsistency. Similarly it has been said here that if a qualification of the principal description clearly appears upon the face of the supposedly inconsistent matter, it may be considered. *Drew* v. *Drew, supra*, 513. But the inconsistency must be clear on the face of the reference, or no ambiguity will be created.

The Maine rule harmonizes with the views already expressed. Where the particular description is unambiguous, it can be neither enlarged nor diminished by a reference, unless the intention to enlarge or restrict appears on the face of the reference. *Jones* v. *Company*, 85 Me. 210; *Brown* v. *Heard*, 85 Me. 294; *Perry* v. *Buswell*, 113 Me. 399. This rule is approved in 3 Washburn, Real Property, (6th *ed.*), 414. It is declared also in *Morrow* v. *Willard*, 30 Vt. 118,

120, 121, and in *Huntley* v. *Houghton,* 85 Vt. 200. The Rhode Island court cites the Maine rule with favor. *Gaddes* v. *Pawtucket Institution for Savings,* 33 R. I. 177, 189, 190.

Where the description by metes and bounds is unambiguous, the added clause "being the same" creates no ambiguity. *Malette* v. *Wright,* 120 Ga. 735, 741. This is the very rationale of the rule. No ambiguous reference is to be explained so as to create an ambiguity where there is a complete and unambiguous particular description. The rule is sensible and thoroughly workable. It was clearly pointed out in a recent case that "the same" may mean either "part of the same" or "all the same," and that a phrase of doubtful meaning should not be taken to create an ambiguity in the antecedent unambiguous description. *Fidelity &c. Company* v. *Bobb,* 306 Pa. 411. Compare *Cartwright* v. *Trueblood,* 90 Tex. 535; *Coffee* v. *Manly,* 166 S. W. (2d.) 377, 380.

The following cases appear to recognize the general rule of construction when the particular description is unambiguous. *Cornett* v. *Creech,* 30 Ky. Law Rep. 1265, 1268 (but see *Elliott* v. *Green,* 294 Ky. 660); *Colter* v. *Mann,* 18 Minn. 96; *Fancher* v. *Prock* (Missouri), 88 S. W. (2d.) 179; *Mexico &c. Company* v. *Roberts* (Missouri), 167 S. W. (2d.), 660, 663; *Lockwood* v. *Hall,* 44 N. Y. S. (2d.), 345; *Baltimore &c. Association* v. *Bethel,* 120 N. C. 344; *Byrd* v. *Phillips,* 120 Tenn. 14; *Phoenix &c. Company* v. *Company* (Tenn.), 112 S. W. (2d.), 381, 383; *Scheller* v. *Groesbeck* (Texas), 231 S. W. 1092; *Klein* v. *Company,* 126 Tex. 450, 457; *Gaskins* v. *Hunton,* 92 Va. 528, 531; *Glenn* v. *Company,* 99 Va. 695, 701; *Crim* v. *O'Brien,* 69 W. Va. 754, 758; *Prentice* v. *Railroad,* 154 U. S. 163. Contra: *Lawler* v. *Bradford,* 113 La. 415.

Some of the cases cited restrict the general rule in the same manner and to the same extent as in *Drew* v. *Drew,* 28 N. H. 489, 513, and permit the use of the reference in construction where the reference is definite and specific, as by the use of the phrase "all the premises" or its equivalent. *Byrd* v. *Phillips, supra; Gaskins* v. *Hunton, supra.* But the case before us does not permit the application of the restriction and the admission of parol evidence to explain the ambiguity hopefully to be created by the reference. The restriction was well stated over a hundred years ago by *Ruffin,* C. J., who said that the reference cannot control the construction unless of itself it shows "a manifest intention to convey the whole or a certain part of the particular tract described in the grant or deed referred to." *Everitt* v. *Thomas,* 23 N. C. 252, 256.

A recent North Carolina case illustrates the point. The deed, by particular description, conveyed only lots 1, 2, and 3, "meaning all those lots conveyed" by named deeds, some of which conveyed lots 3, 4, and 5 but none of which conveyed lots 1 and 2. The jury were instructed that the deed conveyed all five lots. The instruction was sustained by a bare majority of the court. *Stacy*, C. J. wrote a strong dissenting opinion that was based upon the undoubted rule in North Carolina that the reference is to be looked to only when the particular description is ambiguous or insufficient. The difference between the majority and the minority seems to have been in essence no more than a division of opinion on the question whether the reference showed a manifest intention to convey every lot conveyed by the deeds referred to. The majority apparently thought that such an intention was manifest. The minority were probably troubled by the fact that when the deeds referred to were examined it was discovered that they did not convey two of the lots named in the principal description. But three lots were so particularly described as to pass without any reference, and an unambiguous reference ("all") carried title also to the two that were not specifically described in the deed. *Realty &c. Corporation* v. *Fisher*, 216 N. C. 197.

We have before us no reference that manifestly indicates an intention to convey more than was particularly described. It just as manifestly indicates an intention solely to trace the title or to identify tract C. In view of this lack of manifest intention, it would infringe the rule of construction for us to consider the parol evidence heard at the trial in an attempt to supply an intent that the grantors in the chain of title never expressed in the writings. That parol evidence was at best slender, hardly more than what Leighton Johnson, Sophie's husband, supposed his wife to own as the result of Mrs. Littlefield's deed to her. His testimony was confined substantially to his own construction of the deed, which he thought or understood conveyed both tracts C and D. The nearest that he came to attributing any intention to Mrs. Littlefield was this: "It was stated that whatever she owned was to come to my wife. That was the proposition . . . that was the understanding we had." He did not say that Betsey said that, rather than Mrs. Johnson or himself, or who made the proposition, or that Betsey ever expressed such an understanding at or about the time she gave the deed. The testimony, even if it had been competent, which it was not, would be altogether too ambiguous to resolve a reference into a manifest inten-

tion to change the meaning of a perfectly correct and unambiguous particular description.

Upon the construction here given, none of those in the chain of title subsequent to Betsey Littlefield could claim to have constructive possession of tract D. One who enters under a deed is presumed to enter claiming according to his title. Entry on any part of the land deeded gives constructive possession of everything embraced in the title, but it cannot give constructive possession (sometimes unnecessarily called "color of title") to anything beyond the bounds conveyed. *Breck* v. *Young*, 11 N. H. 485, 491, 492; *Woods* v. *Banks*, 14 N. H. 101, 110; *Edmunds* v. *Griffin*, 41 N. H. 529, 532; *Wells* v. *Company*, 48 N. H. 491, 529.

The writ of entry does not raise questions of equitable title. *New Parish* v. *Odiorne*, 1 N. H. 232; *Chapin* v. *Society*, 8 Gray (Mass.) 580. No present opinion is required upon the question whether by amendment or by a separate proceeding the plaintiff may have her deed from Brennan reformed for mistake. *Pollard* v. *Ketterer*, 221 Mass. 317, 322.

But the plaintiff claims the right to possession under another deed. On April 5, 1926, Mrs. Johnson gave to Charles F. Finlay a quitclaim deed of tract D, properly described. The referee ruled that by this deed the grantee was vested with color of title to the disputed premises and added: "At all events, the plaintiff has title to [the disputed premises] superior to any that the defendants have advanced." The ruling overlooks the fact that it is her own seizin of the premises and deprivation of that seizin by the defendants that she must show. Admitting (but not deciding) that as an heir of her husband, the plaintiff may have an interest in such rights of seizin as he had at his death, we must look beyond the "better title" to the possession, else we shall miss the issues raised by this proceeding.

On April 5, 1926, as far as appears, Mrs. Johnson had neither title to tract D, nor possession. Without one or the other, her quitclaim deed of that day could not pass seizin to Mr. Finlay. *Tilton* v. *Stanyan*, 57 N. H. 489. Nevertheless, if Mr. Finlay or the plaintiff in his right, made an entry on tract D and took possession, it might be found that they acquired seizin of so much of the tract as was not already in the possession of others. *Winkley* v. *Kaime*, 32 N. H. 268, 277.

There is evidence that before April 5, 1926, the defendants or their predecessors in occupation had for ten years been in possession of at least some part of the disputed premises. There is evidence that

since then they have encroached further, and upon land of which the plaintiff gained actual possession. The defendants were not entitled to a directed verdict.

But the verdict cannot stand in view of the obvious error by all concerned in trying title primarily, rather than possession. Justice clearly demands that the verdict be set aside and a fair trial of all the issues had. Since a new trial will probably not disclose the errors of the first, we think it unnecessary to consider other exceptions.

*New trial.*

All concurred.